And may it please the court, my name is Heather Goodson-Zachary and I'm here on behalf of the Appellant John Doe. I request five minutes for rebuttal. Well, as I said before, you'll have to monitor your own time because it'll keep running as long as you're arguing, but you may do as you wish. Appellant John Doe was found responsible for sexual assault by the University of Arkansas in this case, following a deeply flawed and discriminatory process. He was denied notice of the allegations upon which the panel ultimately convicted him. He was denied the right to cross-examine his accuser and significant witnesses in the case, and he was ultimately tried before a panel seeking to appease the public outcry for convictions at the height of the Me Too movement and Jane Roe's highly publicized protest. The only justification for the panel's decision is its unsupported finding that the female accuser, Jane Roe, was more credible than John Doe, despite substantial evidence to the contrary, and this leads to the determination that the decision was the result of gender bias. The district court's subsequent dismissal of John Doe's due process and Title IX claims is out of step with prevailing law from circuits around the country, and it also required the court to resolve significant disputed issues of fact in favor of the defendants, which violates the standard for a motion to dismiss. The judgment should be reversed and remanded. Your Honors, I'd like to start with John Doe's claim for due process and specifically the allegation that he was denied notice in this case. Can I, before you jump into that, just a preliminary question. I understood that this was, the district court ruled on a motion to dismiss. Yes, sir, that's correct. Right. Well, was it actually, I know he said it was a motion to dismiss and purported to dismiss, but was it really akin to a summary judgment? Were there other materials reviewed by the district court other than the pleadings? No, Your Honor, it was just the pleadings in this case. Okay, so if that's true, the complaint in paragraphs 28 through 63 contains factual allegations about the contact between these individuals. Correct, Your Honor. And it alleges, makes factual allegations that whatever sexual contact took place, that it was consensual and that Roe was not intoxicated. That's correct, Your Honor. So wouldn't the district court have to accept those facts? He should have, Your Honor, yes. The district court should have accepted those facts, but he in fact did not. So if those facts are accepted, don't we know from the outset that the decision that was made at the university was incorrect? Yes, Your Honor. On the basis of the facts as they are alleged in the complaint, the decision, the university's decision is substantially out of step with the facts of the case. Okay, so if we know, based on the allegations in the complaint, which are accepted as true, that a wrong decision was reached, what do we do with that? Does that, does it matter whether the decision was factually wrong? Your Honor, we're not here reviewing the correctness, the right or wrongness of the decision, except to the extent that that plays into allegations of gender bias, and also at some level goes to the due process and the denial of notice and cross-examination. But we're not here challenging to say that the university's decision was wrong or wasn't supported by substantial evidence. Well, we have to presume that it's wrong, because at this level, at this stage of the proceedings, it's erroneous because it's claimed that in the complaint. The question really becomes is what's the nexus to gender bias, right? That's correct, Your Honor. I mean, because given the stage, I mean, if this is summary judgment, then we could have gone back and looked at the whole record and we'd say, now there seems to be evidence to support that. That's not where we're at. We're in a motion to dismiss, and so we presume the facts as well pled. All right? So they're well pled, and he says that the evidence does not support the finding. We assume that's true. Then we get to, well, what's the nexus to gender bias? That's where, to me, the question is, what evidence points to that that's in the complaint? You're correct, Your Honor. So for Title IX, for the Title IX claim, there are two claims in this case. There is a due process claim and a Title IX claim. And the nexus to gender is only required for the Title IX claim. It's not required for the due process claim. But under the Title IX claim, there's two prongs, the erroneous outcome, which, I mean, the articulable doubt, which we've already discussed, and then particular circumstances suggesting that gender bias was a motivating factor. And in circuits around the country, there's been several different elements that have been identified as facts that would show some sort of inference of gender discrimination. And I submit to you that we have all of them in this case. One of them is this idea of sort of general pressure that exists from the 2011 Dear Colleague Letter, in which the Obama administration suggested that claims of sexual assault made by females against males should be treated with a higher level of seriousness. A lot of courts have said that in and of itself is not enough. You've got to have something more besides that. But we have several something mores here in this case. A big one is that we have targeted pressure on the University of Arkansas from not one, not two, but three separate OCR complaints that were initiated by the Office of Civil Rights against the University of Arkansas. Now, if the OCR determines that the University of Arkansas is in violation of Title IX, the university can lose its funding. So this is significant. But in addition to that, there was also a highly publicized civil lawsuit that was brought against the university claiming that the university was not accurately implementing its Title IX process and was not handling a claim of sexual assault made by a female against a male in a proper manner. So that's the second targeted pressure that we have. There was also an investigation initiated by the Arkansas legislature in January of 2018, which is just a couple months before the hearing panel in this case dealt with this case, in which they were looking at allegations that the University of Arkansas was failing to take seriously allegations of sexual assault by females against males. And then the last and most significant one is that Jane Roe herself, following the Title IX coordinator's finding that John Doe was not responsible for sexual assault, Jane Roe instituted a widely publicized protest of that decision. And in fact, the university's own paper came out and said that she was denied fundamental justice in that case, to the point that the university then had to come out and make a response to defend their Title IX process. And about two days later was when the university hearing panel released its decision in this case, finding that John Doe was responsible for the finding. Now, another factor that's been held to show some sort of gender bias is when there is a substantial deviation from the evidence in the case. So not just sort of an articulable doubt, but a substantial deviation from the evidence in the case. And here we have that substantial deviation because there is no evidence in the record of lack of consent. And that is alleged in our complaint. The interesting thing is that that ties back into the notice problem, because the decision that was issued by the hearing panel is not even in line with the notice that was given to John Doe. John Doe was initially provided notice that he was being charged for having sexual contact with Jane Rowe when she was incapacitated and unable to give consent. And so what the notice actually said was specifically, Rowe alleges that sexual contact occurred while she was incapacitated and unable to give consent. And that's at Joint Appendix 16. Now, the university policy says that sexual assault can occur in two ways, through the use of force or through the use of incapacitation. The university says that those are only two examples and that there can be other ways that it can also arise. But that's really irrelevant in this case, because where the university chooses to unilaterally limit its notice to incapacitation, and that was confirmed by John Doe in this case, where the university unilaterally limits its notice to a certain set of facts, it cannot then expand back up to the general idea without some additional notice or some additional allegations to John Doe. And so the significant part about that is that he was initially notified, this is an incapacitation case. He went back, confirmed it, said, just wanted to make sure this is all we're dealing with, incapacitation. The university said yes. After the Title IX coordinator's decision came down, finding him not responsible, Jane Roe then submitted her appeal, and in her appeal, she included this statement that any time sexual acts are performed to someone who is incapacitated, those acts are committed by force. Now the university wants to say that this provides notice to John Doe, that now there is the issue of without consent or by force, that's going to be dealt with by the hearing panel. But if you look at her actual statement, it's just a rephrasing of the incapacitation claim. All she's trying to do is to say, you can prove by force, by proving incapacitation, without having to prove that pesky little thing of he knew or should have known that I was incapacitated. So again, her notice doesn't take it out of the realm of incapacitation. We're still limited to allegations of incapacitation. Then the hearing panel, in its decision, decides that she may have been incapacitated, but he had no reason to know of any incapacitation. So essentially they acquit him of the incapacitation element of the case. But then they go on to analyze whether or not there was in fact consent given for the sexual contact. And the significance of this is huge. One, because, and I'm going to quickly wrap up here so that I can save some time, but one is that he was denied the right of cross-examination. So he wasn't given the opportunity to ask any questions. And he didn't know going into the hearing that he needed to be asking questions about did you in fact consent. The answer to that question is irrelevant if she's incapacitated. It doesn't matter if she was screaming yes from the rooftops. If she's incapacitated, her consent is irrelevant. So the issue of whether or not she did or did not in fact consent was not at issue in the case. There was no proof on that. The investigation wasn't on that. The cross-examination questions that were submitted were not on that, as far as we know. And then the panel unilaterally used that issue of whether or not there was consent, and found that since John Doe had not proven that there was consent, that he was guilty. Now, we submit that this case has a myriad of due process violations, and also because of the significant public pressure, because of the fact that the decision is so out of line with the evidence in the case, that we've adequately and plausibly pled a Title IX violation. If there's no further questions at this point, I'd like to reserve the remainder of my time. Very well. You may do so. Mr. Cordy, we'll hear from you. Thank you, Your Honor. Your Honor, may it please the Court, my name is Joe Cordy. I represent the athletes. You may raise that podium. There's a button on the right there. It will not go up any further, Your Honor. Just do your best, then we can hear you. Is that better? The closer you are, the better. Your Honors, let me begin with the notice issue. This is from paragraph 114 of the plaintiff's complaint. In her appeal, Jane Roe alleged that Farrar, who was the Title IX coordinator, made an assumption that she had consented to sexual contact from John Doe, and that his decision, the Title IX coordinator's decision, lacked any analysis regarding whether she had in fact consented. The plaintiff, John Doe, had notice of this because he received a copy of her appeal. That's paragraph 116 of the complaint. The appeal panel found that the sexual contact had occurred without consent. That's paragraphs 131, 134, and 135 of the complaint. So the plaintiff had notice of what the allegation was that he was found responsible for. He absolutely had notice of that. How does paragraph 115 relate to paragraph 114 in the complaint? Is paragraph 115 a further explication of paragraph 115? In other words, that's what she meant by the assumption of consent? Do you have that in front of you or not? Yes, Your Honor. After the sentence you quoted about the assumption that she had consented, it goes on in 115 to say specifically, Jane Roe stated the business about force and incapacitation not being mutually exclusive. That was her understanding. Isn't he alleging that when she was talking about consent she was alleging force because of incapacitation? Isn't that what Doe is alleging here? No, Your Honor. No, Your Honor. What she's stating is her understanding of what the policy says. She appealed on another ground. She did also appeal on the incapacitation piece. She also appealed on that. She appealed on two grounds. That she was too incapacitated to consent and that she, in fact, did not consent. She had two grounds for her appeal. She was inconsistent appeal, inconsistent grounds? You mean I was too incapacitated but I had capacity but did not consent? I don't know that those are inconsistent but she had two grounds for her appeal. I'm sorry. What the panel found was the ground that she succeeded on was that she did not consent. But her testimony actually was something along the lines that says I don't know why I would have. Which isn't exactly a denial of consent. She didn't say I did not consent. She said I don't know why I would have. Now that seems totally inconsistent with this claim that I denied consent. Well, I believe when she said that she does not know why she would have consented that a rational fact finder, in this case the panel, could take that as evidence that she did not consent. But she starts with I don't know. I'm ambivalent. I don't recall. I'm whatever. She says I don't remember but I don't know why I would have consented. Which is evidence that the plaintiff was not a person that she was interested in having sex with. I don't know why I would have consented.  as evidence of lack of consent. Well, that's a separate question from the notice point, though. That goes to the sort of sufficiency of the evidence that the finder could have concluded she didn't voluntarily consent. But the argument here isn't so much sufficiency. I guess it is a little bit when they claim it was an erroneous outcome. Maybe that's what you're getting to. Well, I'm just trying to answer both questions. He had notice. He was found responsible for having sexual contact without consent. And that was one of the bases. I'm sorry. That was one of the bases for her appeal. I mean, it just was. It's just right there. And that's consistent with the policy because the policy defines sexual assault as, in the very first sentence, sexual contact with another person without that person's consent. Does that include somebody who's incapacitated when the other party does not know about the incapacitation? Is that what you're saying? The policy includes that? There are, I suppose, three ways that someone could violate the policy. Sexual contact without consent. So regardless of incapacitation, say, for example, the victim is frozen in fear or just in shock and just doesn't react. The victim is just in shock, basically, and just doesn't respond, doesn't consent. And the respondent goes ahead and has sexual contact without consent. That violates the policy. Another way could be that the person consents, the victim consents, but the person is so intoxicated that he or she is incapacitated. That would not be a valid consent. And then we have force, where someone is overpowered. So there's three ways the policy can be violated. But the policy is clear. It can't just be passive. It has to be active consent. It can't just be this passive consent that might be given if someone is just in a state of fright or shock. And so there's three ways the policy can violate it. He was found responsible for having sexual contact without consent, without regard to force and without regard to incapacitation. Now, she did raise incapacitation in her appeal. That is true, but the ground the panel found was she didn't consent. That was the ground that they found him responsible for. Not force, not incapacity. And he had notice of that. But for our purposes, looking at a motion to dismiss and looking at the facts alleged by the plaintiff, we would be required to say that that decision was incorrect. No, Your Honor. Factually incorrect for purposes of a ruling on this motion to dismiss. No, Your Honor. Paragraph 221C2 of the plaintiff's complaint, they allege that she testified, Jane Roe testified, that she does not know why she would have consented. And that is evidence that she did not consent. A jury could base a verdict in a criminal case on that. A jury in a civil, say, a sexual assault case in court could base a verdict on that. It's evidence. Juries do this all the time. They make credibility determinations. They look at the witness's demeanor. They decide who's telling the truth. And they weigh the evidence. We're not making credibility determinations. We're reading the complaint. And the complaint clearly alleges that there was consent. Despite, even with a statement that, as Judge Erickson mentioned, that she says, I don't know why I would have consented, but the fact alleged is there was consent. Well, just assume that the decision is factually wrong. Does that end the inquiry? No, Your Honor, because as the questioning earlier indicated or suggested, there is no link to that to intentional gender discrimination. There's just not. Just because the panel found him responsible does not suggest gender discrimination. Maybe others would disagree with that decision that the panel reached, but the Supreme Court in Davis and this court and the Dardanelle School District case makes clear that the campus administrators and these campus adjudications are not to be second-guessed. I mean, sure, others may disagree with the decision the panel made, but there is no link to intentional gender discrimination. Yes, he is a male. Yes, they found against him, but that does not suggest that they found against him because he happens to be male. They judged his credibility. They judged his demeanor. And they made a decision, in their view, that he's responsible. That doesn't violate due process. It doesn't violate Title IX. It just doesn't. On the question whether the decision was factually wrong, if I understand it, I think what you're saying is the complaint alleges evidence on both sides of whether there was consent and that a panel reasonably could have credited her. That's your view. Yes, Your Honor. But from Doe's point of view, he's alleging that she did consent, and he's saying we have to take that as true for purposes of the motion to dismiss. So I guess you're maybe saying, well, even if it was ultimately wrong, it was factually supported.  And therefore it's not wrong in the sense of what? It's not gender discrimination. It wouldn't be intentional gender discrimination. They come to the court and say their argument is, look, there was no evidence. The record at the campus level is completely devoid of evidence that he violated the policy. And I'm saying look at paragraph 221. No, it's not completely devoid. As everyone knows, the plaintiff drafts this complaint to try to persuade someone that there was a violation. But even as they've drafted this in a somewhat slanted manner, it still demonstrates that there's evidence that he violated the policy. Where does the policy give notice that you can be responsible without using force, threat, or intimidation and without using the victim's helplessness of which you're aware? Paragraph 71 of the complaint, Your Honor, they quote the policy. It defines sexual assault as an actual or attempted sexual contact with another person without that person's consent. It's the very first sentence of the policy. I mean, that's what they found him responsible for. What's the rest of the paragraph about? It's other examples of the way someone might be found responsible. But they cannot get around the first sentence that sexual assault is defined as a sexual contact without that person's consent. It just says it right there, first sentence. Can I turn to a couple of other issues real quick before I run out of time? You may. On the federal and local pressure point that they have raised, it's just not plausible that the university or really that anyone would intentionally discriminate against someone based on gender in order to prove to the Department of Education that they are not discriminating based on gender. I mean, that's just not plausible. Well, it's not as implausible as you think when you're in an environment during the Me Too movement where people are saying that the women always have to be believed. All you've got to do is turn on the news and you hear people say that. So, I mean, in a rational world, it would be completely implausible. But in this political environment, maybe it's not quite so implausible. Then, if a university or a fund recipient were to do that, then they're just setting themselves up for a Title IX violation from a person of a different gender. But it's already a system that's under siege, right? I mean, that's undisputed. You have problems with the football coach. Is that not true? There were no problems with the football coach. Sorry, wrong case. Wrong institution. Yeah, well, it's not in the complaint. So, I'm just saying, even taking their allegations is true in the complaint. I mean, really, are we going to be... I mean, that is just so, to me, implausible, so illogical that no person would really do that, try to prove that they're not discriminating, that they're not engaging in intentional gender discrimination by discriminating against someone else. That's just not... No one would do that in the real world. I think that's totally implausible. Plus... Well, the complaints were that they were biased against female complainants. And so, why wouldn't it be plausible that they'll say, well, we're going to have to find more men responsible and maybe we'll go light on the punishment in order to kind of smooth things over? Why isn't that plausible? About the pattern of discrimination that they've alleged, I mean, first, their allegation says nothing about the evidence in those other cases. I mean, for all we know, I mean, the evidence... Well, we don't have any evidence. That's true. Maybe that's why she'd go to development of the evidence. What about that? No, Your Honor, because they have to state a claim before the doors are open to discovery. And number two, this allegation that they're making about this pattern of discrimination in other cases, it asks the court, they're asking the court not only to second-guess the panel's decision in this case, they're also asking the court to second-guess the panel's decisions in those other cases that they say establishes a pattern of discrimination. Are they really asking us to do that, or are they asking us to say that there's a maelstrom of public opinion that's out there? I mean, again, with the public opinion, I mean, here's the thing, Your Honor. I mean, if their theory is correct, then the next time the university fines against a female, fines against a woman, then that woman could come to court under their theory and say, oh, the university was under pressure to rule against me because of John Doe's lawsuit. And that's just not right. I just ask the court to let the university make its decisions in these matters on a case-by-case basis without regard, without having to worry about, oh, you know, keeping some tally. We found against the woman in these cases, and we found against the guys in these cases. We shouldn't have to keep some running tally and worry about that tally. We just need to be able to be free to make our decisions on a case-by-case basis based on the evidence and do the best we can to be fair to both sides. That's what we want to do is be fair to both sides. They're both sides of our students. We want to be fair to all of our students, not just the men, not just the women, not in regard to gender of any kind. And that's what we did here. I didn't get to talk about the cross-examination piece. If the court asks questions about it, I will. Why don't we give you both sides another two minutes because you should talk about due process a little bit. I appreciate that, Your Honor. With regard to cross-examination. Have you said all you want to say about notice before you get to cross-examination? I believe so, Your Honor. Those paragraphs, he had notice of what he was found responsible for. On cross-examination, he was, in a sense, allowed to cross-examine Jane Rowe. He had to do it through written questions. True enough, it wasn't a direct cross-examination. But he was allowed, as was she, to submit written questions to the panel to ask the opposite party. That is a perfectly reasonable, rational way to conduct things because keep in mind, please, that these campus proceedings are not presided over by professional judges who have experience in controlling a cross-examination. A professional judge has experience in making instantaneous rulings on objections. What if the panel leaves out the best questions? And so the person never really has a chance to use the engine of truth. That would be problematic, Your Honor, but that's not what we have here. Doesn't he allege that they left out questions that he wanted? He just says that they left out questions, but there is no pleading or no allegation what questions they left out. So it's a conclusory allegation. Oh, they left out questions. They paraphrased some questions, but we don't know what questions. He was there. He should be able to, and his advisor was there. They should be able to at least give the court some indication in the complaint what questions were left out. Number two, a lot of times these students are not represented by counsel. They don't have a Sixth Amendment right to counsel. They come to these proceedings by themselves. And in the hands of a professional trial lawyer who has litigated cases, cross-examination may be a good way to get to the credibility of the witnesses. But in the hands of non-lawyers in these types of situations, I submit that the cross-examinations would just quickly devolve into a shouting match, an acrimony, and requiring written questions is a perfectly fine way to conduct the proceeding. Very well. Thank you for your argument. Thank you, Your Honors. Ms. Ackrey, we'll hear from you in rebuttal. Did you add the two minutes on there? Very well. What on this – oh, wait a minute. Let's get the clock right. No, I meant add two minutes to what she had, yeah. So 538, I think, is where we're going. All right. Very well. You may proceed. The thing that occurs to me at the outset is that the university's argument seems to boil down to we need to be free to make our own decisions here and you guys can't second guess whatever we do, but we can't be expected to provide fundamental fairness, like substantial notice about the allegations that are underlying the complaint. That's not their argument. They say we gave notice. They do say – The policy says, first sentence, it's misconduct to have sex without consent. Yes, Your Honor. But to give that a parallel that's a little more mainstream, that's like capital murder. Capital murder is a generic charge that is then broken down into subcategories. If the state chooses to charge someone under, say, felony capital murder, then it would be a violation of due process to then submit to the jury jury instructions on premeditated and deliberated because that's not what he was charged with. And in this case, lack of consent is sort of the generic set, and then there's subcategories of use of force, threat, or intimidation, or the use of incapacitation of which the assailant knows about. Now, he gives this third category of what if somebody's frozen in fright. But one, I submit to you, that would be physical incapacitation. If you are physically frozen, then you would be incapacitated. So that would still be covered by the incapacitation prong of the definition. But two, that wasn't provided notice of either. No one ever provided notice to John Doe that he was going to have to defend against allegations that she was frozen in fright and thus could not consent. Nowhere, not even Jane Doe in her appeal ever alleged that she was frozen in fright and thus couldn't provide consent. Well, who had the, where was the burden, or is there a burden? That's a tricky question, Your Honor. And if so, what was the burden of proof? So the university policy provides that students are innocent until proven guilty, essentially, that there is a presumption of innocence. So from that standard, the burden would be on the university to prove the violation. It's not actually set up as Doe versus Rowe. It's set up as Doe versus the university, which is also important when you think about the university's point on notice because it's the university who is in charge of the allegations. It's not Jane Rowe. So Jane Rowe can say whatever she wants to in her notice of appeal, but it's the university who decides what allegations they're going to pursue against him. And John Doe, following her somewhat cryptic notice of appeal, went to the university and said, this seems like maybe we're getting confused here. What am I actually defending against? And at that point the university said, we won't tell you until you get to the hearing. So if the burden is on the university, and based upon the allegations contained in the notice, would the burden then be to show that there was no consent, whether due to incapacitation or otherwise? The burden, yes. Based on the notice that John Doe received, because the university chose to limit the allegations in the case to allegations of incapacity, the burden on the university would be to show that she was incapacitated and that he knew or had reason to know of the incapacitation. And that would be to the preponderance? Why doesn't paragraph 114 go beyond incapacitation? I'm sorry, I don't have this one in front of me. Is this the one about I knew or didn't know? This is her appeal where she says Farrar made an assumption that she consented, but his decision lacked any analysis regarding whether she had in fact consented. Right. So then she went on, as paragraph 115 explains, then she went on to clarify that what she was saying is any time that someone has sexual contact when they are incapacitated, that is by its very nature by force. So what she was trying to do in her appeal, she wasn't bringing two grounds for appeal. She was still appealing the incapacitation. She was just trying to backdoor in without having to also prove that he knew or should have known. And the reason that she was doing that is because proving that he knew or should have known was virtually impossible on the facts as they were given. I think Judge Erickson had a question. My question is that there is a presumption of innocence, but the burden of proof eventually becomes to a preponderance, right? Yes, correct. And so based on that, again, I don't Was the burden actually reversed here? Yes, the burden was in fact reversed because Doe to prove consent? To prove consent? Yes, it was. Rather than the university proving lack of consent? Yes, because what the panel said was that there was no evidence of consent in the record. What they found was that none of the witnesses had anything substantive to say on whether or not there was consent. Doe didn't remember whether or not she consented. They didn't credit this statement about, I don't know why I would have. What they said is she didn't remember, which is what she said. I don't remember whether I consented or not. They said the evidence is equal. There is no evidence on either side of the scale, so we find there is no evidence of consent in the record. If the evidence is equal, the presumption of innocence mandates that John Doe should not have been convicted in that case. That's just a plain old evidence and equivocation case. Yes. With the court's- Well, what they specifically are alleged to have said is because the record does not support a finding of consent. Correct. Because the record does not support a finding of consent, the question should be whether or not the record supports a finding of lack of consent. Someone needed to say at some point she did not consent. Well, they also said- Well, the tie goes against the burden. They also said that they find it's more likely than not that you violated the policy. Right, but that- If you put those two together, doesn't that mean they found it was more likely than not that she did not consent? Well, I don't think that they could have made that finding, given the evidence that was in front of them, and that's not the finding that they made. The finding that they made was that the evidence did not support a finding of consent. Would you like me to discuss briefly the Title IX and the inference of discrimination? I'm out of time at this point. I think you covered that to some extent already, and we have, of course, your thorough briefs. Oh, the only other thing I'd like to add, I'm sorry, on cross-examination, just because it was something that he brought up, is that the questions that Your Honor was asking about shouldn't we determine the level of questions that were omitted here? Yes, you should. And if you go to the First Circuit case in HADAC, that's exactly what happened in that case. But you said you didn't allege that anything particular was omitted. Well, we don't actually have that information, because the university has refused to give us the copy of the hearing. And yes, John Doe was there, but he was in a very heightened and emotional state, and he frankly doesn't remember what questions he submitted, what questions they asked. I mean, if he can't plead it adequately, though, then he loses, doesn't he? Well, Your Honor, I think under the HADAC case, the presumption, if you read HADAC, is that if the university denies the right of cross-examination, undertakes that burden on itself, that it has the burden of ensuring that adequate cross-examination happens. Right, but he hasn't alleged. The argument is he hasn't alleged that they failed to meet that burden, because he hasn't alleged that they left out any important questions. Well, we allege that they left out questions. I think at that point, the motion to dismiss standard would require that you plead, that you infer that those are important questions. And we also pled that the university also changed the questions and did not ask pertinent follow-up questions. So I think we sufficiently pled that. We'll consider that. Thank you for your argument. Thank you. The case is submitted, and the court will file an opinion in due course. And counsel are excused. Thank you.